UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH JAMISON, et al., | ) | CASE NO. 4:10CV2843 |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | |
| ANTHONY ANGELO, et al., | ) | MEMORANDUM OPINION & |
| | ) | ORDER |
| DEFENDANTS. | ) | |

Before the Court are two motions for summary judgment filed by defendants Anthony Angelo ("Angelo"), Robert Pinti ("Pinti"), and the Warren City Health District ("Board of Health") (collectively "Health District defendants") (Doc. No. 41) and by defendants Michael Keys (" Keys") and the City of Warren, Ohio ("City") (collectively "City defendants") (Doc. No. 42.) Plaintiffs Kenneth Jamison ("Jamison") and Kathy Jamison ("Mrs. Jamison") (collectively "plaintiffs" or "Jamisons") have filed an opposition brief to the Health District defendants' motion (Doc. No. 57), to which the Health District defendants have replied. (Doc. No. 62.) The City defendants' motion is unopposed, however, the City defendants have filed a reply brief, responding to factual representations and legal conclusions in plaintiffs' opposition brief that relate to their motion. (Doc. No. 60.) These matters are ripe for disposition. For the reasons that follow, defendants' motions for summary judgment are **GRANTED in part**.

## I.     BACKGROUND

### A.  The Complaint

This case arises from plaintiffs' purchase of two residential rental properties located in Warren, Ohio, and the subsequent condemnation of both properties by the Warren City

Health District. On November 12, 2010, plaintiffs filed this action in the Trumbull County Court of Common Pleas, alleging violations of their federal and state constitutional rights and seeking a writ of mandamus compelling defendants to commence proceedings to compensate plaintiffs for the regulatory taking of their real property. (Doc. No. 1-2.) The complaint named as defendants, the City of Warren, Ohio; the Warren City Health District; Anthony Angelo, a registered sanitarian employed by the Health District; Deputy Health Commissioner Robert Pinti; and the City's Director of Community Development Michael Keys. On December 16, 2010, defendants removed the action to this Court pursuant to 28 U.S.C. § 1441, invoking this Court's jurisdiction under 28 U.S.C. § 1331. (Doc. No. 1.) On April 15, 2011, after seeking leave of the Court, plaintiffs filed an amended complaint. (Doc. No. 22 [Am. Compl.].)

In their amended complaint, plaintiffs allege violations of their civil rights pursuant to 42 U.S.C. § 1983, for violation of the Takings Clause of the Fifth Amendment; plaintiffs' procedural and substantive due process rights secured by the Fourteenth Amendment; and unlawful search and seizure in violation of the Fourth Amendment. The amended complaint also alleges that the condemnation of plaintiffs' real properties violated the takings clause of the Ohio Constitution Article I, Section 19. Plaintiffs further assert several state law claims for negligent hiring, training, retention and supervision of Angelo; negligent infliction of emotional distress; and intentional infliction of emotional distress by Angelo. Plaintiffs seek compensatory and punitive damages, a writ of mandamus compelling the commencement of compensation proceedings, and an injunction preventing defendants from demolishing plaintiffs' real properties.

## B.  Factual Background

On March 16, 2005, plaintiffs purchased a multi-unit rental property located at 278 Mulberry Avenue in Warren, Ohio (the "Mulberry property"). Realtor Ethel Littrell assisted plaintiffs. (Doc. No. 44, Jamison Dep. at 14, 17.) Prior to purchasing the Mulberry property, Jamison spoke with Angelo, who confirmed the validity of the property's occupancy permit. (Jamison Dep. at 15.) Jamison also requested that Angelo inspect the property, but he contends that Angelo refused, stating he did not have time to do so. (Jamison Dep. at 16.) Jamison testified further that prior to buying the Mulberry property, he did not speak with anyone regarding the parking available to the property's tenants. (Jamison Dep. at 28.)[1] Mrs. Jamison testified that she had no contact with any City employees or officials regarding the property, did not review any of the City ordinances or regulations regarding rental properties, and had no knowledge of the type of permits in place.[2] (Doc. No. 45, Kathy Jamison Dep. at 15-17, 33.).

---

[1]  Jamison's affidavit attached to the brief in opposition to the Health District defendants' motion contains a different version of the events preceding the purchase of the Mulberry property. (Doc. No. 57-1, Jamison Aff.) In his affidavit, Jamison states that he and his wife hired a realtor named Marlin Palich to represent them in the purchase of the Mulberry property. (Jamison Aff. ¶ 7.) He avers that prior to buying the property he spoke with Palich about insufficient parking at the Mulberry property. He asserts that Palich called Angelo to ask about the parking and that Angelo assured Palich that the City would permit plaintiffs to rent out the property despite the fact that the property did not have the required number of parking spaces under the municipal housing code. (Jamison Aff. ¶¶ 7-8.) Jamison's affidavit directly contradicts his deposition testimony that he did not discuss the availability of parking at the Mulberry property with anyone and that he could not recall any conversations with his real estate agent about the purchase. (Jamison Dep. at 28-29.)

It is well settled that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)). *See also Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006) (explaining "*Reid* and its progeny have…barred the nonmoving party from avoiding summary judgment by simply filing an affidavit that directly contradicts that party's previous testimony."). To the extent plaintiff's affidavit contradicts his previous statements made under oath (i.e., his deposition testimony), the Court finds Jamison's affidavit to be sham testimony that may justly be disregarded. *Aerel, S.R.L.*, 448 F.3d at 906; *Shahzade v. Gregory*, 930 F. Supp. 673, 676 (D. Mass. 1996); *Hankins v. Title Max of Alabama, Inc.*, No. Civ. A. 05 AR 00905 S, 2006 WL 4393576, at *9 (N.D. Ala. Sept. 26, 2006).

[2] In December 2006, Mrs. Jamison moved to Gladys, Virginia. (Kathy Jamison Dep. at 6.)

On April 13, 2005, Angelo inspected the Mulberry property in the presence of Jamison and the Mulberry tenants. (Jamison Dep. at 68-69.) During the April inspection, Angelo identified numerous housing code violations, which he discussed with Jamison. Thereafter, Jamison received a written report of the violations from Angelo. (Jamison Dep. at 67, Ex. D.) The written notice indicated that Jamison had until May 13, 2005 to complete the necessary repairs. Jamison contends, however, that Angelo told him during the inspection that he could "take all summer" to fix the violations if he needed to. (Jamison Dep. at 74, Ex. D.)

On December 1, 2005, Jamison wrote a letter to Angelo, requesting a hearing to discuss a period for completion of upgrades to the Mulberry property. (Jamison Dep. at 78, Ex. G.) On December 9, 2005, Jamison received a letter from Deputy Health Commissioner Pinti, stating that the Mulberry property would be discussed at the upcoming Board of Health meeting on December 28, 2005 and that a decision regarding the property would be made at that time. (Jamison Dep. at 83-84, Ex. H.)

On December 28, 2005, Jamison attended the Board of Health meeting unrepresented. (Jamison Dep. at 85.) At the meeting, the attendees discussed the violations found during Angelo's April inspection of the Mulberry property, as well as the availability of parking to the property's tenants. (Jamison Dep. at 86-88.) Jamison testified that this was the first time he learned that Angelo was seeking to revoke the dwelling permit for the Mulberry road property due to insufficient parking. (Jamison Dep. at 55-56, 86-87.) Defendants, however, assert that the Mulberry occupancy permit had been revoked prior to the December meeting.[3] No resolution was reached and the matter was tabled for thirty days. (Jamison Dep. at 93-94.) At that time,

---

[3] During his deposition, Jamison was asked about a letter dated November 23, 2005, signed by Angelo, which indicated that the Health District had revoked the dwelling or occupancy permit for the Mulberry property. (Jamison

Jamison believed that the Mulberry property occupancy permits were still valid and that, according to the Mayor of Warren, if he completed certain electrical upgrades at the property, Angelo would "back off." (Jamison Dep. at 95.)

In January or February 2006, Jamison made electrical upgrades to the Mulberry property. (Jamison Dep. at 97-98.) Jamison testified that he subsequently asked Angelo to re-inspect the property, but he refused. (Jamison Dep. at 98-99.) According to Jamison, no further inspections of the property were conducted. (*Id*. at 98.)

In or about July 2006, plaintiffs purchased a residential property adjacent to the Mulberry property, at 845 Stiles Street, Warren, Ohio (the "Stiles property"). (Jamison Dep. at 31-32.) The Stiles property was a vacant, foreclosed home with inoperative utilities. (Jamison Dep. at 34.) In August 2006, Jamison submitted a request to the Water Department, seeking to have the water service restored at the Stiles property. (Jamison Dep. at 112-13.) According to Jamison, he was told that water service would not be restored to the house without Angelo's permission. (Jamison Dep. at 114.) Jamison testified that he asked Angelo for help getting the water turned on, but Angelo told him if he wanted the water turned on, he needed to clean the property up first. (Jamison Dep. at 115.) The water service was eventually restored after Jamison agreed not to rent the Stiles property out or otherwise allow anyone to live there. (Jamison Dep. at 119.)

---

Dep. at 77, Ex. F.) Jamison denied receiving the written notice from the City or Board of Health regarding property or that he was aware of the parking problems prior to December 2005. (Jamison Dep. at 51-52, 55-56.) Jamison, however, indicated that he recalled receiving a letter around that time, summoning him to appear before the Board of Health. (Jamison Dep. at 77-78, 80.) He suggested it was possible that he had received the November 23rd letter a few weeks before the December meeting. (*Id*. at 80.) Further, Jamison admits in his affidavit that he received written notice of the parking issue "less than a month" after purchasing the Mulberry property and that Angelo verbally informed him of the parking problems during the April 2005 inspection. (Jamison Aff. ¶¶ 5, 17.)

On August 23, 2006, criminal charges were filed against Jamison in the Warren Municipal Court for operating the Mulberry property in violation of the City's dwelling permit ordinance. (Jamison Dep. at 100-04, 152-55; *see also*, Doc. No. 41-2, Angelo Aff. ¶ 6; Doc. No. 41-3, Docket and Judgment Entry, *City of Warren v. Ken G. Jamison*, No. 2006 CR B 01646 (Warren Mun. Ct. Dist.)). Jamison understood that the basis for the criminal action was insufficient parking at the Mulberry property. (Jamison Dep. at 101.) On February 2, 2007, following a bench trial, Jamison was found guilty, and the tenants at the Mulberry property were evicted. (*Id.*) Jamison filed an appeal, which was dismissed by the Eleventh District Court of Appeals of Ohio. (Jamison Dep. at 154-55; Angelo Aff. ¶ 6; *City of Warren v. Ken Jamison*, No. 2007-T-0044 (Ohio Ct. App. 11th Dist. Aug. 27, 2007)). Notwithstanding this state court conviction, Jamison contends that he in fact completed all the necessary repairs to the Mulberry property, but that Angelo's continued refusal to re-inspect the properties lead directly to his conviction. (Jamison Aff. ¶¶ 25-27, 34-38.)

On March 22, 2010, Pinti sent two notices of condemnation to plaintiffs, one as to the Mulberry property and the other as to the Stiles property, indicating that the Board of Health would be discussing both properties at a public hearing on April 14, 2010. (Jamison Dep. at 108-109, Ex. M (Mulberry property)); Doc. No. 42-4, Keys Aff. Exs. 1 (Mulberry property) and 2 (Stiles property).) The Jamisons admit receiving notice of the condemnation hearing. (Kathy Jamison Dep. at 26-28, Ex. L; Jamison Dep. at 109.) The condemnation notices identified housing code violations, advised plaintiffs that they had thirty days to remedy the violations and/or demolish the buildings, and informed plaintiffs of their right to request a hearing before the Board of Health. (Keys Aff. Exs. 1 and 2.) Neither plaintiff attended the April 14, 2010

hearing; Jamison testified at deposition simply that he "couldn't make it." (*Id.*; Jamison Dep. at 109.).

On April 17, 2010, Pinti notified the Jamisons that the Board of Health had determined at the April 14, 2010 hearing that the Mulberry property should be demolished. (Kathy Jamison Dep. at 30-31; Jamison Dep. at 110-11, Ex. N.) The Jamisons understood that the demolition notice applied to the Stiles property as well. (Kathy Jamison Dep. at 31; Jamison Dep. at 120-21.) Mrs. Jamison stated that she was aware that plaintiffs could have appealed the Board of Health's decision to a state court. (Kathy Jamison Dep. at 174-76.) Other than filing the instant suit alleging violations of plaintiffs' constitutional rights under the federal and state constitutions, plaintiffs did not appeal the administrative condemnation decision. (Jamison Dep. at 121.)

In May 2010, Jamison contacted Community Development Director Keys regarding the availability of grant monies through the Neighborhood Stabilization Program ("NSP") for rehabilitation of the Mulberry and Stiles properties and/or reimbursement of the value of the properties to be demolished. (Jamison Dep. at 121-27; Keys Aff. ¶¶ 1-5.) Keys informed Jamison that the NSP monies were appropriated for other projects and not available for his requested use. (Jamison Dep. at 124.)[4] In a letter dated July 26, 2010, Keys again explained the unavailability of the NSP grant monies for Jamison's request and informed plaintiffs that asbestos inspections would be completed at the Mulberry and Stiles properties in preparation for demolition. (*Id.* at 48-49, Ex. P.)

---

[4] NSP funds are used by the City to prepare and demolish properties condemned by the Board of Health. (Keys Aff. ¶6.) The funds that are applied to demolitions are reimbursed to the NSP grant by placing an assessment on the property owner's tax duplicate; the funds do not reimburse a property owner for the cost or value of demolished property and are not available to property owners attempting to rehabilitate rental properties. (Keys Aff. ¶¶ 7-9.)

On May 16, 2010, employees of a private company hired by the City to conduct the required asbestos inspections entered the Mulberry property. (Keys Aff. ¶¶ 11-15.) Jamison received a call from a neighbor that day informing him that two men had broken into the Mulberry property. (Jamison Dep. at 130.) Jamison immediately called the police and drove over to the property. (Jamison Dep. at 131-32.) When he arrived, the officers informed him that the two men were asbestos inspectors hired by the City. (*Id.* at 132.) Jamison was upset and the police asked the inspectors to leave. (Jamison Dep. at 134-35.) Jamison later learned that the asbestos inspectors gained entry into the Stiles property. (*Id.* at 136-37.) Ultimately, the asbestos inspection of both properties was conducted, but to date, the properties have not yet been demolished. (Keys Aff. ¶¶ 11-15.)

## C.  Defendants' Motions for Summary Judgment

Defendants have moved separately for summary judgment. The Health District defendants' motion argues that plaintiffs' failure to appeal the administrative condemnation and demolition orders at issue is fatal to their federal claims under the doctrine of *res judicata*. Specifically, these defendants argue that the Board of Health's nuisance finding as to plaintiffs' real properties is an unreviewed final decision of a state administrative body, which the Court must give preclusive effect. The Heath District defendants urge that each of plaintiffs' claims can be rejected as a matter of law as was done in *Davet v. City of Cleveland*, No. 1:03CV1623, Doc. No. 43 at 10-11 (N.D. Ohio March 4, 2004), *aff'd* 456 F.3d 549, 552 (6th Cir. 2006). In addition to echoing the Health District defendants' *res judicata* arguments, the City defendants argue that the abatement of a public nuisance cannot result in an unconstitutional taking, plaintiffs' takings claim is not ripe, they have not brought a sufficient mandamus request, and the evidence shows that none of plaintiffs' constitutional rights was violated. Further, Keys asserts that he is entitled

8

to qualified immunity. As to plaintiffs' state law claims, the Health District defendants ask that the Court decline to exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1347(c)(3) or, in the alternative, these defendants, along with the City defendants, assert they are entitled to statutory immunity and/or judgment as a matter of law on plaintiffs' state law claims.

Plaintiffs have filed a single brief in opposition. The docket text indicates that plaintiffs' brief is a response to both of the pending motions for summary judgment; however, plaintiffs' brief only offers argument in response to the Health District defendants' motion. Plaintiffs do not dispute that they failed to appeal the state administrative rulings, but argue instead that the "overwhelming focus and gravamen of this case is the unlawful conduct of but one of the defendants, Anthony Angelo." (Doc. No. 57 at 2.) The remainder of plaintiffs' brief discusses almost exclusively the conduct of defendant Angelo alone, who they allege acted with reckless and deliberate indifference to plaintiffs' substantive due process rights by revoking plaintiffs' occupancy permits and thereafter refusing to re-inspect the property. Plaintiffs assert Angelo's conduct was motivated by a desire to run competing property owners, such as plaintiffs, out of the city. In support, plaintiffs offer the affidavits of realtor Marlin Palich[5] and plaintiff Kenneth Jamison, as well as Angelo's personnel record. Plaintiffs argue these documents create issues of material fact preventing summary judgment and establish that

---

[5] Defendants urge the court to disregard Palich's affidavit because plaintiffs did not previously identify Marlin Palich as a witness. (*See*, Doc. No. 10, Plaintiff's Initial Disclosures.) Plaintiffs had an absolute duty under Fed. R. Civ. P. 26 to disclose to defendants those persons likely to have discoverable information and to supplement their required disclosures in a timely manner upon the discovery of additional information. Fed. R. Civ. P. 26(a)(1)(i) and (e)(1). Palich's affidavit was signed on December 21, 2011, more than four months after the fact discovery cut-off date (August 8, 2011) set by the Court in this case. (Doc. No. 57-2.) Further, the averments in the affidavit consist almost entirely of speculation and hearsay statements. For these reasons, the Court finds that consideration of this affidavit would prejudice defendants. The affidavit, therefore, shall not be considered by the Court. *Heard v. Cnty. of Summit*, No 5:05CV3001, 2007 WL 846512, at *6-7 (N.D. Ohio Mary 20, 2007).

Angelo's wrongful conduct was motivated by Angelo's desire to deprive Jamison of his real property. (Jamison Aff. ¶¶ 9, 35, 27, 37.)

Both sets of defendants have replied to plaintiffs' opposition brief, arguing that plaintiffs have failed to come forward with any admissible evidence that creates a genuine issue of material fact and, therefore, summary judgment remains appropriate.

## II.    DISCUSSION

### A.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides in relevant part as follows:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n,* 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable

evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict [.]" *Id.* at 248.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir. 1989), *citing Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988). The nonmoving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## B.  Plaintiffs' Federal Claims

To prevail on their federal § 1983 claims, plaintiffs must allege facts sufficient to establish that: (1) they were deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was caused by someone acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

### 1.  Takings Claim

Count One of the amended complaint alleges that defendants' condemnation of plaintiffs' real properties was "arbitrary and capricious" and violated the Takings Clause of the

11

Fifth Amendment to the United States Constitution. (Am. Compl. ¶¶ 2, 57-59.) The City defendants assert that plaintiffs' takings claim fails on several grounds. First, the abatement of a public nuisance via condemnation/demolition does not represent a viable taking. Second, plaintiffs' failure to exhaust their administrative remedies for an appeal of the Board of Health's determination renders any taking claim barred by *res judicata*. Third, plaintiff's mandamus claim is not ripe for adjudication because plaintiffs failed to make a sufficient mandamus request in the state courts. (Doc. No. 42-1 at 13-15.) The City's first and second grounds for dismissal of the takings claim are well taken. The third ground is not relevant to the facts of this case because, as discussed below, there was no "taking."

The Fifth Amendment proscribes the taking of property without just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). Such compensation, however, is not mandated where the state legitimately exercises its police power to abate a property nuisance. *Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1022 (1992)) (citation omitted). In § 1983 actions seeking redress for deprivations of real property, the Sixth Circuit holds that the question of whether a landowner's property constitutes a public nuisance is fully and finally litigated where the landowner does not avail himself of a right to appeal an administrative decision, which would provide a full opportunity to litigate that question. *Crow v. City of Springfield, Ohio*, 15 F. App'x 219, 223-24 (6th Cir. 2001) (citing *Patsy v. Bd. of Regents of the State of Florida*, 457 U.S. 496 (1982); *Bannun, Inc. v. City of Louisville*, 958 F.2d 1354 (6th Cir. 1992).

As the Sixth Circuit explained in *Davet,*

> When a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts. . . . Under Ohio law, *res judicata,* whether claim preclusion or issue preclusion, applies to administrative proceedings that are of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding.

*Davet*, 456 F.3d at 552 (internal quotation marks and citations omitted).

Here, the record evidence is clear that the properties at issue were condemned and placed on the demolition list to abate a public nuisance pursuant to the Warren Codified Ordinances. The Board of Health's actions represent the enforcement of a legitimate police power, and are thus not a compensable taking. *Davet*, 456 F.3d at 553. Indeed, plaintiffs do not seek to contest the legitimacy of the Board of Health's nuisance and condemnation determinations and admit that they failed to exhaust their administrative remedies. (Doc. No. 57 at 19.) In any event, plaintiffs' subsequent failure to appeal the Board of Health's final determination, renders that decision *res judicata*, and therefore, precludes plaintiffs' from asserting their taking claims as a matter of law and those claims are dismissed. *See Davet, supra; Crow, supra.*

Furthermore, to the extent plaintiffs seek to impose personal liability upon the individual defendants for the alleged unconstitutional taking of their real property, such a claim fails as a matter of law. A takings claim cannot be asserted against an individual defendant. *Coles v. Bd. Of Park Comm'rs*, No. 3:08CV2968, 2009 WL 2922036, at *1 (N.D. Ohio Sept. 8, 2009) ("[P]laintiffs cannot assert a claim for a violation of the Takings Clause against an individual defendant.") (citing Vicory *v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984)).[6]

---

[6] To the extent Count One of the amended complaint seeks to assert a violation of the Ohio Constitution, it states no cognizable claim upon which relief can be granted. The Ohio Constitution does not create a private cause of action

13

2. *Due Process Claims*

    a. *Procedural Due Process*

Count Two of the amended complaint alleges defendants' conduct deprived plaintiffs of their constitutional right to substantive and procedural due process of law. (Am. Compl. ¶¶ 2, 60-62.) The Sixth Circuit has noted that "[p]rocedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens,* 411 F.3d 697, 708 (6th Cir. 2005). It is undisputed that plaintiffs were provided notice and a full opportunity to be present at the Board of Health's condemnation hearing and to present evidence challenging the condemnation and demolition determinations. Plaintiffs' failed to avail themselves of this opportunity. Accordingly, plaintiffs' procedural due process claim lacks merit and is dismissed. *Crow*, 15 F. App'x at 224 ("there is no due process violation when the municipality abates a nuisance pursuant to notice.") (citing *Emery v. Toledo*, 178 F.3d 1294 (6th Cir. 1999)).

    b. *Substantive Due Process*

The right not to be subject to "arbitrary or capricious" action by a state either by legislative or administrative action is commonly referred to as a "substantive due process right." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992). In *County of Sacramento v. Lewis,* 523 U.S. 833 (1998), the Supreme Court discussed at length how the "substantive component of the Due Process Clause is violated by executive action only when it can properly

---

for monetary damages. *Davet v. City of Cleveland*, No. 1:03CV1323, Doc. No. 43 at 17 (N.D. Ohio Mar. 4, 2004) ("Ohio law is devoid of a statute akin to 42 U.S.C. § 1983, which enables direct causes of action for monetary damages for federal Constitutional violations. Furthermore, although some states imply a cause of action against both individuals and governments, for monetary damages for violations of state constitutions, Ohio is not among them.") (citing *Provens v. Stark Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 64 Ohio St. 3d 252 (1992)); *see also, Sanford v. Cnty. of Lucas, Ohio*, 3:07 CV 3588, 2009 WL 723227, at *7-8 (N.D. Ohio Mar. 16, 2009) (citations omitted).

14

be characterized as arbitrary, or conscience shocking, in a constitutional sense." 523 U.S. at 833 (internal quotations and citation omitted).

Plaintiffs have failed to come forward with any evidence to support their substantive due process claim. To prevail on their substantive due process claim, plaintiffs must prove that the City, the Health District, and the individual defendants "acted in a manner offensive of community standards of decency and with a callous indifference to plaintiffs' rights, so to rise to the level of reckless or appalling behavior." *Davet*, No. 1:03CV623, Doc. No. 43 at 13. The undisputed facts before the Court do not support such a claim.

Following the inspection of plaintiffs' real properties by a registered sanitarian, defendants condemned the properties as public nuisances pursuant to local ordinances. Plaintiffs received notice of these determinations and had an opportunity to challenge the sanitarian's findings at a public hearing. Plaintiffs, however, did not appear at the hearing and did not appeal the Board of Health's subsequent determination that the properties be demolished. Plaintiffs were provided notice of the demolition orders, but again failed to appeal. No reasonable person could conclude that defendants' conduct was offensive of the standards of decency, conscience shocking, or that they acted with callous indifference to plaintiffs' constitutional rights.

Finally, plaintiffs' effort to sever their substantive due process claim against defendant Angelo is unavailing. Plaintiffs' opposition brief states, "the gravamen of plaintiffs' lawsuit is against defendant Angelo, not the Board  . . . Counts Two through Five, sets forth . . . the alleged wrongful and unlawful conduct of . . . Angelo, not of the defendant Health District or any defendant other than Angelo." (Doc. No. 57 at 19.) Relying on the affidavit of  Jamison, plaintiffs assert that: Angelo told  Jamison that the occupancy certificate on the Mulberry property was good; Angelo refused to inspect the Mulberry property prior to plaintiffs' purchase

15

thereof; Angelo's ownership of rental properties within the City creates a conflict of interest with respect to his public duties; and  Angelo engaged in a pattern of revoking occupancy permits and then refusing to re-inspect properties, leading to their condemnation and subsequent sale to his business associates. Plaintiffs assert that these averments create an issue of material fact as to whether Angelo's role as inspector was improperly motivated by his status as landowner within the City and, thus, whether he deprived them of their substantive due process rights.

   Plaintiff Jamison's affidavit, however, is deficient as a matter of law in several respects. The Sixth Circuit has held that "it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). Fed. R. Civ. P. 56(c)(4) requires that an affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Statements made "on information and belief' are insufficient to satisfy the personal knowledge requirement of Rule 56(e). *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 956 (S.D. Ohio 2000) (citations omitted). Moreover, "'[i]t is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits' submitted for summary judgment.'" *Harrah's Entm't, Inc. v. Ace Am. Ins. Co.,* 100 F. App'x 387, 394 (6th Cir. 2004) (quoting *F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 643 (6th Cir. 2002)). In addition, "hearsay evidence cannot be considered on a motion for summary judgment." *Wiley*, 20 F.3d at 226. Finally, in *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir. 1984), the Sixth Circuit held that a party does not create a genuine issue of material fact by supplying an affidavit which contradicts his previously given deposition testimony. Here, not only does Jamison's affidavit contradict his prior deposition testimony, as discussed above, but also it is replete with

speculation, legal conclusions, and inadmissible hearsay, and is thus insufficient to create a question of fact upon which summary judgment may be denied.[7]

Further, Jamison's contentions that Angelo repeatedly refused to re-inspect the Mulberry property, wrongfully refused to turn the water on to the Stiles property, and told him to "get out of Warren," do not rise to the level of conscious shocking or reckless or appalling behavior sufficient to support a substantive due process claim. *See, e.g., Nuchols v. Berrong*, 268 F. App'x 414, 418 (6th Cir. 2008) (death threats of sheriff did not create a substantial due process violation).

For all the foregoing reasons, plaintiffs' substantive due process claim is dismissed.

*3. Fourth Amendment Claim*

Finally, plaintiffs' amended complaint alleges that their Fourth Amendment rights were violated when asbestos contractors hired by the City entered the condemned Mulberry and Stiles properties. The City defendants argue that the warrantless entry into plaintiffs' real properties did not invade a constitutionally protected privacy interest. Plaintiffs offer no argument in opposition.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

---

[7] Specifically, the allegations contained in paragraph 27 of Jamison's affidavit—that Angelo engaged in the practice of revoking permits for his own personal gain—consist entirely of hearsay statements made by "an acquaintance of a former police chief" for which there is no readily discernible non-hearsay use. Further, the averments in paragraph 9—that Angelo's dual status as landlord and sanitarian creates a conflict of interest—are impermissibly speculative, not based on a factual foundation arising from personal knowledge, and represent ultimate conclusions of law, which Jamison is not qualified to make. Similarly, the statements in paragraph 37—that Angelo had a pecuniary interest in preventing the re-inspection of plaintiffs' real properties and exercised his "power to arbitrarily, capriciously, wrongfully and unlawfully deny" Jamison's requests for permits—are bare legal conclusions for which no factual support is offered. Each of the previously mentioned averments is legally insufficient to create a genuine issue of material fact.

be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend. IV. The Sixth Circuit has not had an opportunity to address the issue, however, several other circuits have held that the warrantless entry to abate a nuisance does not violate the Fourth Amendment provided such entry does not invade a constitutionally-protected privacy interest. *See Schneider v. Cnty. of San Diego,* 28 F.3d 89 (9th Cir. 1994) (county's warrantless seizure of vehicles pursuant to nuisance ordinance was not in violation of Fourth Amendment, where owner parked vehicles on a 1.4 acre lot approximately 240 feet from a house the owner rented out to tenants; owner had no legitimate expectation of privacy in a field adjacent to a house in which he did not live); *Hroch v. City of Omaha,* 4 F.3d 693 (8th Cir. 1993) (demolition without a warrant of deteriorated buildings condemned as public nuisances was not an unreasonable seizure, where owner did not live in the buildings nor did he take any steps to protect the personal property contained in the buildings).

The Fifth Circuit decision in the analogous case of *Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001), is particularly instructive. In that case, the court resolved the issue of whether a warrantless entrance upon condemned property scheduled for demolition violated the property owner's Fourth Amendment rights. The court concluded that a warrant is not necessary when entering property that has been declared a nuisance by means of established police power procedures as such entry is reasonable under the Fourth Amendment. In doing so, the court found that the property owners had been afforded adequate due process relating to the condemnation proceedings and, therefore, the warrantless entrance upon the property to remediate the established nuisance was reasonable under the Fourth Amendment. *Id*. at 653. Moreover, the court determined that the entry was reasonable because the property owners did not have a legitimate expectation of privacy once the properties were condemned and vacant. *Id*.

18

The Fifth Circuit's decision in *Freemen* is persuasive and applies to the facts of this case. Here, plaintiffs were afforded notice and a hearing regarding the condemnation of their real properties. Plaintiffs failed to contest the condemnation determinations and were notified that the properties had been condemned and scheduled to be demolished. The asbestos inspectors' entrance upon the condemned and vacant properties was to remediate a public nuisance and as such was reasonable. Moreover, at the time of the asbestos inspectors' entrance, the properties were vacant; thus, plaintiffs did not have a legitimate expectation of privacy in the condemned buildings. Accordingly, plaintiffs' Fourth Amendment claim fails as a matter of law.[8]

### C.  Plaintiffs' State Law Claims

The Health District defendants have requested that the Court decline jurisdiction over plaintiffs' state law claims. The district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The decision to exercise supplemental jurisdiction depends on "judicial economy, convenience, fairness, and comity . . . ." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.,* 89 F.3d 1244, 1254–55 (6th Cir. 1996). Having determined at an early state of litigation that all of plaintiffs' federal claims in this action lack merit, the Court finds that this factor, coupled with issues of

---

[8]  Keys has raised a qualified immunity defense to plaintiffs' Fourth Amendment claim. Under *Saucier v. Katz,* 533 U.S. 194 (2001), *overruled on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009), in order to grant qualified immunity, the Court must decide whether  Keys violated plaintiffs' Fourth Amendment constitutional right to be free from unreasonable searches and seizures and, if so, whether that constitutional right was clearly established. The Court has concluded that plaintiff's Fourth Amendment rights were not violated and so it is unnecessary to proceed further with the qualified immunity analysis.

comity, militates in favor of this Court declining to exercise supplemental jurisdiction over plaintiffs' state law claims. Accordingly, this action is remanded to the Trumbull County Court of Common Pleas for adjudication of plaintiffs' state court claims.

**III.    CONCLUSION**

For all of the foregoing reasons, the separately filed motions for summary judgment are **GRANTED in part**. Plaintiffs' federal claims are hereby **DISMISSED**. Further, the Court declines to exercise its supplemental jurisdiction over plaintiffs' state law claims and those claims are **REMANDED** to the Trumbull County Court of Common Pleas.

**IT IS SO ORDERED**.

Dated: September 24, 2012

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**